**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

**BARBARA OLINGER, as Mother and**
**Next friend of "A", a Minor Child**
**Under the Age of 18 years,**

                    **Plaintiffs,**

                                        **Civil Action No. 5:07-29-JMH**

**v.**

**THE CHURCH OF JESUS CHRIST**
**OF LATTER-DAY SAINTS AND JASON STARKS,**

                    **Defendants.**

_____

**BRIEF IN OPPOSITION TO MOTION FOR SUMMARYJUDGEMENT**
_____

Plaintiff, BARBARA OLINGER, as Mother and Next Friend of "A," a Minor Child

Under the Age of 18 Years ("Plaintiff"), by counsel, respectfully submits this Brief in

opposition to the Motion for Summary Judgment filed herein by Defendant Church of Jesus

Christ of Latter-Day Saints (the "Church").


**THE SUMMARY JUDGMENT STANDARD**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper

only "if the pleadings, depositions, answers to interrogatories, and admission on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  In reviewing a motion for summary judgment, the court

"must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-Sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**ARGUMENT**

**I.          SUMMARY JUDGMENT IS INAPPROPRIATE BECAUSE A GENUINE ISSUE OF MATERIAL FACT EXISTS ON THE ISSUCE OF WHETHER THE CHURCH IS VICARIOUSLY LIABLE FOR THE MOLESTATION SUFFERED BY THE PLANTIFF'S CHILD AT THE HANDS OF DEFENDANT STARKS.**

In *Patterson v Blair,* 172 S.W.2d 361 (Ky. 2005), the Supreme Court of Kentucky held that in determining whether an agent is acting within the scope of his employment, thereby giving rise to a claim for vicarious liability on the part of his employer, the emphasis is on the motive of the agent as opposed to the foreseeability of harm. *Id.* at 369-70. Hence, although an act may be intentional or criminal in nature, if the servant's motive is in furtherance of the employer's business, liability is proper even though the employer may have forbidden the servant's actions. *Id* (citing *Frederick v. Collins,* 378 S.W.2d 617 (Ky. 1964)).

In his position as a missionary for the Church, Starks's, mission was to "proselytize," which is defined as "to induce someone to convert to one's faith" and "to recruit someone to join one's party, institution, or cause." Merriam-Webster's Collegiate Dictionary 998 (11th ed. 2004). The mission is an honorable one, during which the missionary is instructed to obey the law of chastity, to avoid sexual conduct of any kind outside marriage, to always stay in sight of his missionary companion and to avoid any behavior which could be misunderstood or appear to be inappropriate for a period of two years. (Memorandum of Law in Support of Summary Judgment p.6 (citing Birmhall Affidavit & 15).) In the end, however, Starks's goal was not simply to remain chaste or avoid sexual conduct for two years. His mission was to recruit new members for the Church.

Since the focus in vicarious liability cases must be on the servant's motive under Kentucky Law, the question becomes whether, in molesting the Plaintiff's son, Starks's motive could be deemed in furtherance of the Church's business of recruiting new members. As the *Patterson* court made clear, it is not the act itself which is decisive, but the actor's motivation in committing it. Because Starks's goal was recruitment of members, a jury reasonably could find that he was acting in furtherance of that goal when he made physical contact with the Plaintiff's son.

Defendant Church's reliance on the Kentucky Supreme Court's decision in *Osborne v. Payne*, 31 S. W.2d 911 (Ky. 2000), is misplaced. In that case, the plaintiff and his wife were experiencing martial difficulties, so they sought counseling from their parish priest. The plaintiff and his wife were divorced after the plaintiff discovered that his wife had been carrying on an adulterous relationship with the priest. *Id.* at 913. The

3

plaintiff sued the priest and the diocese under a vicarious liability theory for its alleged

negligent training, screening, and supervision of the priest.  *Id.*  The Supreme Court of

Kentucky affirmed the circuit court's dismissal of the diocese because acceptance of a

theory of vicarious liability under the facts of that case would in effect have required the

diocese "to become an absolute insurer for the behavior of anyone who was in the

priesthood and would result in strict liability on the part of the diocese for any actionable

wrong involving a parishioner.  We must conclude that such an argument is absurd.

Certainly, the scope of employment of a priest could include marriage counseling, but it

clearly does not include adultery."  *Id.* at 915.  As the court explained:

> The critical analysis is whether the employee or agent was acting within
> the scope of his employment at the time of his tortuous act.  *Wood v.
> Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81 (Ky. 1946),
> provides that for it to be within the scope of its employment, the conduct
> must be of the same general nature as the authorized or incidental to the
> conduct authorized.  A principal is not liable under the doctrine of
> respondent *superior* unless the intentional wrongs of the agent were
> calculated to advance the cause of the principal or were appropriate to the
> normal scope of the operator's employment.  *Hennis v. B.F. Goodrich Co.,
> Inc.,* Ky., 349 S.W.2d 680 (1961).  In this situation, it is the abuse by the
> priest of his position that exceeds the scope of his employment.  It is
> beyond question that Osborne was not advancing any cause of the diocese
> or engaging in behavior appropriate to the normal scope of his
> employment. *Id.*

*Id.*  The priest in Osborne committed acts based on purely personal motives,

which were in no way connected with the employer's interest.  Here, however, the

motivation was different.  Starks's motive was to recruit those with whom he came into

contact to his church.  He was engaged by the Church to go door to door and, using his

powers of persuasion, convince those persons he encountered that they should become

Mormons.  It cannot be said, as a matter of law, that his molestation of the Plaintiff's

4

child, albeit perverse and in violation of Church policy, was not intended, at least in part, to persuade the child to join the Church.  Accordingly, a genuine issue of material fact exists as to vicarious liability of the Church for Starks's molestation of the Plaintiff's son. Summary Judgment is therefore inappropriate.

> **II.     SUMMARY JUDGMENT IS INAPPROPRIATE BECAUSE A GENUINE ISSUE OF MATERIAL FACT EXISTS ON THE ISSUE OF WHETHER THE CHURCH IS LIABLE FOR NEGLIGENCE IN ITS SUPERVISION OF DEFENDANT STARKS.**

Kentucky has adopted the definition in Restatement (Second) of Agency Sec. 213, which provides as follows:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> > (a)     in giving improper or ambiguous orders [or] in failing to make proper regulations; or
> >
> > (b)     in the employment of improper persons or instrumentalities in work involving risk of harm to others [ ; or ]
> >
> > (c)     in the supervision of the activity; or
> >
> > (d)     in permitting, or failing to prevent, negligent or other tortions conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

*Divita v. Ziegler,* No. 2005-CA-001343-MR, 2007 WL 29390, at *8 (Ky. Ct. App. 2007). Thus, Kentucky recognizes negligent supervision by an employer as an independent tort separate from the doctrine of *respondeat superior.*

On the issue of negligent supervision, there is one glaring factual omission in the Church's Memorandum.  While the Church acknowledges the policy that its missionaries remain in the company of their assigned companions, it fails to note that the abuse which occurred in this case resulted when Starks was permitted to remain on his own.  As the plaintiff's attached affidavit states, Defendant Starks worked as a missionary for the Church in Lee County, Kentucky, and he was assigned two companion missionaries during his stay: first, Dylan Ainsworth, then, in late 2005, Elder Rexroat.  Church policy controlled the practices of all three men while in Kentucky.  Pertinent to the plaintiff's complaint is a paragraph from the Defendant's Exhibit 1A, a publication titled Missionary Handbook.  The paragraph occurs on page 13 under a sction titled "Missionary Conduct":

To assist you to obey the law of chastity and to avoid criminal charges, you should always remain with your companion.  You should never be alone with anyone else, male or female, adult or child.  It was the violation of that policy by Mr. Rexroat and Mr. Starks that left open the  possibility for the abuse against the Plaintiff's son that in  fact occurred.  While alone with the child, in the Olinger's own residence, Mr. Starks abused him. Elsewhere in the residence with other family members, Mr. Rexroat proselytized on the Church's behalf.


Defendant Church has also acknowledged in its Memorandum that the reason it requires its missionaries to remain with a companion is to assist them in obeying the Church's law of chastity and to avoid criminal charges.  As such, it was foreseeable that a missionary left without a companion could result in a retreat from the law of chastity and

to possible criminal charges. Under these facts, Plaintiff states a cause of action against the Church, and summary judgment is therefore inappropriate.

The Church relies on *Osborne, Supra* in support of its position that it is entitled to summary judgment on the issue of negligent supervision. In *Osborne,* the Court, addressing the issue of the Church's independent negligence, stated that the plaintiff failed to "present any evidence in the record that [the priest] had a history of sexual misconduct involving parishioners or that the diocese had any knowledge that [the priest] might conceivably engage in such misconduct." 31 S.W.2d at 915. It found, therefore, that the plaintiff husband did not have a cause of action for the "independent negligence" of the diocese. *Id.*

The critical difference between the *Osborne* case and the case at bar is the presence of foreseeability. While the diocese and its administrative agents in *Osborne* had no reason to be aware that the priest might conceivably engage in misconduct, the Church in the instant case, via its missionary/agent Rexroat, knew that Starks had been left without a companion, a companion whose presence it knew was necessary to ensure the safety and wellbeing of those with whom Starks might have come into contact. The upshot is that the Church was aware that Starks was violating the requirement set forth in its Missionary Handbook that he should "never be alone with anyone [other than his companion], male or female, adult or child." Accordingly, unlike the diocese in *Osborne,* the Church did have knowledge that its missionary might conceivably engage in misconduct. The Church's failure to implement the training necessary and the supervision required by its own rules amounts to a failure to act to prevent foreseeable events, a failure constituting negligence.

**III.**          **SUMMARY JUDGMENT IS INAPPROPRIATE BECAUSE A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER THE CHURCH WAS NEGLIGENT IN THE HIRING AND RETENTION OF DEFENDANT STARKS.   IN ADDITION, SUMMARY JUDGEMENT IS PREMATURE  AS WELL AS ON THE ISSUES OF VICARIOUS LIABILITY AND NEGLIGENT SUPERVISION BECAUSE DISCOVERY HAS NOT YET COMMENCED.**

"[T]he Sixth Circuit has indicated that summary judgment motions, as a matter of discretion, may be found premature where discovery has not commenced." *Fifth Third Bank v. Jefferson Pilot Sec. Corp.,* 4:06-CV-122-M, 2007 WL 773734, at *3 (W.D. Ky. 2007); *Brock v. Marymount Med. Ctr., Inc.,* 6;06-285-DCR, 2007 WL 196895, at *8 (E.D. Ky. 2007) (citing *Mckinley v. City of Mansfield,* 404 F.3d 418, 443 (6th Cir. 2005); *Vance by and Through Hammons v. United States,* 90 F.3d 1145, 1149 (6th Cir. 1996). While discovery is necessary with respect to each of the causes of action addressed herein, this is particularly true on the issue of negligent hiring.

In Kentucky, an employer can be liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to third persons. *Oakley v. Flor-Shin, Inc.,* 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).  Kentucky has adopted Restatement (Second) of Agency Sec. 213 (1958), which provides that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:. . .  (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others." *Id.* at

442.  The standard to be followed is whether there is a genuine issue of material fact as to whether the Church knew, or reasonably should have known, that (1) Starks was unfit for the job for which he was employed, and (2) whether his placement or retention in that job created an unreasonable risk of harm to the Plaintiff's son. *Id.*

Based on the Church's Missionary Handbook and Stark's failure to follow its guidelines, a jury reasonably could find that the Church was negligent in hiring, retaining and supervising him as a missionary.  The thrust of Defendant's motion and supporting affidavits seems to be that the Church did all it could to screen and supervise Starks. Obviously, however, simply saying that does not make it true.  Discovery is needed to explore these points.  On this issue, however, additional facts need to be developed. Because the Church has moved for summary judgment before any discovery has been propounded or responded to, Plaintiff has been prevented from obtaining the information necessary to further develop this issue.  Accordingly, this Court should exercise its discretion and allow the Plaintiff to conduct discovery before deciding the Church's summary judgment motion.

**CONCLUSION**

Based on the above points and authorities, the Plaintiff respectfully submits that the Defendant Church's Motion for Summary Judgment must be denied, and this case should be allowed to move forward with discovery and a trial on the merits. To grant summary judgment at this stage of the proceedings would amount to both error and gross miscarriage of justice.

Dated : _____,2007          Respectfully Submitted,


_____
Michael A. Stidham, Esquire
500 Brown Street
Post Office Box 732
Jackson, KY  41339
Telephone:  (606) 666-5401

Attorney for plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served by U.S.

Mail, postage pre-paid, to the following on this the _____ day of October, 2007.

Original to:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
101 Barr Street
Lexington, KY  40507

Copies to:

Hon. Don L. Fleishaker
Hon. Jeremy S. Rogers
DINSMORE & SHOHL LLP
1400 PNC Plaza
500 West Jefferson Street
Louisville, KY  40202

Hon. Bernard Pafunda
Pafunda Law Office
175 E. Main Street
Suite 600
Lexington, KY  40507

_____
MICHAEL A. STIDHAM
STIDHAM LAW OFFICE
ATTORNEY FOR PLAINTIFFS