UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| BARBARA OLINGER, as Mother and Next Friend of "A", a Minor Child Under the Age of 18 Years, ) ) ) ) | Civil Action No. 5:07-29-JMH |
| Plaintiffs, ) | |
| V. ) | |
| THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS and JASON STARKS, ) ) ) | |
| Defendants. ) | |

DEFENDANT CORPORATION OF THE PRESIDENT OF
THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS'
<u>REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Defendant Corporation of the President of The Church of Jesus Christ of Latter-day Saints ("COP")[1], by counsel, hereby states as follows for its reply in support of its motion for summary judgment.

**INTRODUCTION**

Summary judgment should granted be in the Church Defendants' favor because, as is apparent from Plaintiff Barbara Olinger's Response Memorandum, there simply is no evidence supporting her claims against the Church Defendants. Olinger argues the viability of her claims under two theories that are both legally incorrect and factually unsupported. First, she argues that there is a genuine question as to the Church Defendants' vicarious liability for Defendant Jason Stark's ("Stark's") alleged sexual molestation of her child because Stark *might* have molested the child in order to persuade the child to join the Church. Second, she argues that

---

[1] Hereinafter, The Church of Jesus Christ of Latter-day Saints is referred to as "The Church," and both entities are collectively referred to as the "Church Defendants."

there is a genuine factual question with respect to whether the Church Defendants negligently hired, retained or supervised Stark because Stark allegedly failed to perfectly follow the Church's policy requiring missionaries to stay with their companions. Both of these theories, however, are incorrect as a matter of law. In addition, Olinger has set forth no evidence to support either of these theories. As such, the Court should grant summary judgment in favor of the Church Defendants.

I.   **COP CANNOT BE HELD VICARIOUSLY LIABLE FOR STARK'S ALLEGED CRIMINAL ACTION.**

Olinger cites Patterson v. Blair, 172 S.W.3d 361 (Ky. 2005), for the proposition that Kentucky's law of *respondeat superior* holds a principal liable for an agent's intentional torts where the agent -- no matter how misguided -- thought that he or she was advancing the cause of the principal. Relying on that purported rule of law, Olinger's only argument in support of her vicarious liability claim is that, perhaps, Stark's sexual molestation of the child was a perverse attempt to persuade the child to join the Church. (See Plf.'s Resp. Mem., pp. 4-5.)  However, Olinger's argument is wrong as a matter of law and unsupported as a matter of fact.

Olinger asks the Court to apply Kentucky's *respondeat superior* doctrine in a way that would extend the doctrine far beyond any application ever taken or endorsed by Kentucky's courts. Contrary to Olinger's argument, the Court in Patterson did not distill the doctrine of *respondeat superior* into a one-question inquiry into the agent's subjective state of mind. Rather, the Court in Patterson synthesized more than six decades of Kentucky decisions on the doctrine of *respondeat superior*, aptly showing that the doctrine is not susceptible to the kind of oversimplified one-size-fits-all test that Olinger proposes here.

While the Court in Patterson stated that an agent's motivation is *an* emphasis of the inquiry, it clearly is not the only question to be asked in determining whether an agent's tort was

2

committed within the scope of employment. Patterson involved a management-level employee who shot the tires on a truck that he was attempting, on behalf of his employer, to repossess. Id. The Court ruled that, although the shooting was a criminal act, the employer could nonetheless be held vicariously liable for civil assault because the assault was primarily intended to advance the employer's interest. Id.

The Court in Patterson did not hold that an agent's subjective mindset is the *sine qua non* of vicarious liability. For example, the Court specifically pointed out that "another factor that survives today under all theories of determining *respondeat superior* liability" is "the effect of the criminal nature of the employee's activity." Patterson, 172 S.W.3d at 370 (citing Bingham v. Commercial Credit Corporation, 330 S.W.2d 427 (Ky. 1959)). The Court favorably cited the Second Restatement of Agency for the proposition that whether the agent engaged in "a crime, especially if the crime is of some magnitude," should be considered in determining whether the act is within the scope of employment. Id. (quoting Restatement (Second) of Agency § 231(a)). Here, Stark is accused of a very serious crime, and that fact supports the notion that -- no matter how much he may have *thought* the crime advanced the Church -- the Church should not be held liable for it.[2]

---

[2] Courts in other jurisdictions have repeatedly rejected the assertion that sexual abuse could be within the scope of employment. See, eg., N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 599 (Okla. 1999) ("Ministers should not molest children. When they do, it is not a part of the minister's duty nor customary within the business of the congregation. … No reasonable person would conclude that [the minister's] sexual misconduct was within the scope of employment or in furtherance of the national organizations's business."; N.A. v. First Church of Christ, 748 A.2d 692, 700 (Pa. Super. Ct. 2000) ("Nothing about Chick's sexual abuse of N.A. had any connection to the kind and nature of his employment as a minister."); DiPietro v. Lighthouse Ministries, 825 N.E.2d 630, 633-34 (Ohio App. 2005) (no *respondeat superior* liability for priest's sexual misconduct with underage parishioner: [I]ntentional sexual activity is not related to a cleric's duties, nor does it further the Church's interests."); Byrd v. Faber, 565 N.E. 2d 584 (Ohio 1991) ("The Seventh-Day Adventist organization in no way promotes or advocates nonconsensual sexual conduct between pastors and parishioners. . . . Consequently, appellees have failed to state a claim of respondeat superior liability on the part of the church."); Paul J.H. v. Lum, 736 N.Y.S.2d 561 (N.Y. App. 2002); Tichenor v. Roman Catholic Church of Archdiocese of New Orleans, 32 F.3d 953, 960 (5th Cir. 1994) ("It would be hard to imagine a more difficult argument than that Cinel's illicit sexual pursuits were somehow related to his duties as a priest or that they in any way furthered the interests of St. Rita's, his employer.").

3

The <u>Patterson</u> Court also observed that an agent's conduct which is "unprovoked, highly unusual, and quite outrageous" mitigates against holding his principal vicariously liable. <u>Id.</u> at 370 (citing Prosser and Keeton at 506). Here, Stark's alleged action (the sexual molestation of a child) is exactly the kind of unprovoked, unusual and outrageous behavior for which the Church Defendants cannot be held liable. Similarly, the Court noted that an employer is not vicariously liable for an intentional tort of an employee motivated "solely by a desire to satisfy the employee's own sexual proclivities." <u>Id.</u> at 370 (citing <u>American Gen. Life & Accident Ins. Co. v. Hall</u>, 74 S.W.3d 688, 692 (Ky. 2002)); <u>see also</u> <u>Osborne v. Payne</u>, 31 S.W.3d 911 (Ky. 2000).

Olinger's theory that the Church Defendants are liable if, for whatever unspecified perverse reason, Stark thought that his sexual molestation of the child would encourage the child to join the Church, is not supported <u>Patterson</u> or by any other Kentucky decision. Instead, the decision in <u>Osborne</u>, 31 S.W.3d 911, is dispositive. Olinger attempts to distinguish the <u>Osborne</u> case by asserting that Stark, unlike the priest in <u>Osborne</u> who committed adultery with a parishioner, sexually molested the child for the benefit of the Church and not for purely personal reasons. (Plf.'s Resp. Mem., pp. 4-5.) Yet, there can be no question that, just as adultery fell outside the scope of the priest's employment in <u>Osborne</u>, child sexual molestation clearly falls outside of Stark's missionary duties. <u>Id.</u> at 915.

In addition to the flaw in Olinger's legal analysis, her theory's factual premise is absurd. It stretches the imagination to conceive of how Stark, or any missionary, could honestly believe that sexually molesting a child would persuade the child to join the Church. In any event, Olinger can cite to no evidence so much as even indirectly suggesting that Stark might have thought he was advancing the goals of the Church by molesting the child. When asked to

4

describe the alleged sexual contact between Stark and the child, including what was said, Olinger responded:

> The Defendant, Jason Starks [sic], performed oral sex on the Plaintiff "A". I am unaware of the events preceding or leading up to the incident nor the time of the conduct. The conduct was performed in "A's" bedroom and only Jason Starks [sic] and "A" were present in the bedroom. <u>I do not know what was said between my son and him.</u>[3]

(Plf.'s Ans. to Interrog. No. 1, attached hereto as <u>Exhibit 1</u>) (emphasis added).  Thus, there is nothing even in Olinger's own account of the alleged incident that suggests Stark thought he was attempting to achieve a Church goal in molesting the child.

Under the Federal Rules of Civil Procedure, Olinger is required to set forth facts in the record to establish that there is a genuine issue of material fact supporting her claim of vicarious liability.  Fed. R. Civ. P. 56(c).  Although reasonable inference may be drawn in favor of the non-moving party on a summary judgment motion, this standard "does not allow, much less require, that [the Court] draw strained and unreasonable inferences in favor of the nonmovant." <u>Audi AG v. D'Amato</u>, 469 F.3d 534, 545 (6th Cir. 2006).  Because Olinger has set forth no facts to support (even inferentially) her theory of *respondeat superior* and because the theory is not supported by Kentucky law, Olinger's vicarious liability claim should be dismissed on summary judgment.

**II.    TO THE EXTENT THAT OLINGER HAS MADE A CLAIM OF NEGLIGENT SUPERVISION OR NEGLIGENT HIRING, IT SHOULD BE DISMISSED.**

Next, Olinger argues that her lawsuit should not be dismissed as against the Church Defendants because she has a viable claim for negligent hiring and supervision of Stark.  The

---

[3] Presumably, the Plaintiff is capable of obtaining her child's account of what, if anything, Stark may have said. The fact that the child's account is not in the record to support or refute Olinger's *respondeat superior* theory should not be held against the Church Defendants. <u>See</u>, <u>e.g.</u>, Fed. R. Civ. P. 56(c) and (f) (requiring nonmovant to present evidence supporting nonmovant's claims when faced with properly supported summary judgment motion).

5

basis of this direct negligence claim against the Church Defendants is the notion that, for some unspecified reason, it should have been foreseeable to the Church Defendants that Stark was likely to sexually molest the child. First, Olinger's claim in this regard should be dismissed because she did not assert a claim for negligent hiring and supervision in her Complaint, and the time for amending her Complaint has passed. (See Compl.; see also March 13, 2007 Scheduling Order, DN 11.) Regardless, to the extent Olinger has asserted a claim for negligent supervision, there is no evidence to support the theory that Stark's alleged crime was foreseeable.

The "established law in this Commonwealth recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." Oakley v. Flor-Shin, Inc., 964 S.W.2d 438, 442 (Ky. App. 1998). Olinger attempts to side-step the essential requirements of showing the foreseeability of harm and the failure to exercise ordinary care and, instead, asks the Court to hold that the Church Defendants are *per se* liable for Stark's actions. Olinger points out that the Church has a policy requiring its missionaries to remain with their companion, in part to assist missionaries in obeying the Church's law of chastity and in avoiding criminal charges. (Plf.'s Resp. Mem., pp. 6-7.) Olinger claims that Stark violated the policy when he allegedly molested the child at the Olingers' home while his companion was in another room. (Id.; see also Olinger Aff.) As such, Olinger argues that Stark's failure to perfectly adhere to the companion policy must mean that it was foreseeable to the Church Defendants that Stark would molest the child. In sum, Olinger's negligence theory is that the Church's companion policy creates absolute liability for the Church Defendants any time the policy is violated.

Olinger's theory completely misses the mark on Kentucky's law of negligent supervision. As the court in Oakley pointed out, an employer can only be held liable for its failure to exercise

6

ordinary care in supervising an employee, and, then, only when such failure creates a foreseeable risk of harm to a third person. Oakley, 964 S.W.2d at 442. Here, Olinger has neither claimed, nor set forth any evidence, that the Church Defendants failed to exercise ordinary care in supervising Stark. Olinger cannot suggest that "ordinary care" entails a duty by the Church to somehow absolutely ensure that each one of its missionaries never violates the companion policy.

Even more of a stretch is Olinger's theory that Stark's violation of the companion policy somehow meant that the Church Defendants should have foreseen that he would molest the child. Olinger's negligence theory hinges on a gross mischaracterization of the Church's companion policy as one designed specifically to prevent sexual assaults by its missionaries that, without the policy, would be imminent and inevitable. (See Plf.'s Resp. Mem., p. 7.) Nothing could be further from the truth. As explained in detail in COP's memorandum in support of its motion for summary judgment, the kind of sexual assault of which Stark is accused is anathema to Church teachings. Further, the policy was not specific to Stark; it is a general policy designed to protect the missionaries themselves as much as it is to protect third persons. In any event, there was absolutely no reason for the Church Defendants (even if they knew that Stark had violated the companion policy, which they did not) to foresee that Stark might do what he is accused of doing to Olinger's child in this case. In other words, it is a gigantic leap from the knowledge that a missionary didn't adhere to the companion policy to the foreseeability that he might sexually molest a child.[4]

---

[4] Plaintiff's attempts to misconstrue Church doctrine and policy must be rejected as a matter of law. The First Amendment prohibits civil courts (and juries) from hearing disputes about religious doctrine and polity. Since Watson v. Jones, 80 U.S. (13 Wall.) 679 (1871), the United States Supreme Court has repeatedly held that "'civil courts exercise no jurisdiction'" over "'a matter which concerns theological controversy.'" Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 713-14 (1976) (quoting Watson, 80 U.S. (13 Wall.) at 733-34). Civil courts can never "engage in the forbidden process of interpreting and weighing church doctrine." Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 451 (1969). The First Amendment

Finally, Plaintiff's attempt to rely on Osborne, 31 S.W.3d 911, to support its negligent supervision claim is wholly lacking in merit. The Osborne Court considered similar claims of negligent training and supervision with respect to the priest who had sexual relations with the wife of the plaintiff. There, because the defendant diocese had no notice that the priest "had a history of sexual misconduct involving parishioners" or that the priest "might conceivably engage in such misconduct", the Court held there was no basis to support a claim of negligent hiring or supervision. Id. at 915-16. Similarly here, there is no evidence to suggest that Stark had sexually abused children in the past or that the Church was somehow on notice that he might conceivably engage in such misconduct.[5] Accordingly, any negligent supervision or negligent training claim should be dismissed.

---

precludes courts from entangling themselves in "an analysis or examination of ecclesiastical polity or doctrine in settling [civil] disputes." Jones v. Wolf, 443 U.S. 595, 605 (1979). Numerous state and federal courts have invoked these principles to reject or strictly limit various types of civil claims, including common-law torts that require an inquiry into a church's beliefs, doctrines, or polity. See, eg., E.E.O.C. v. Catholic University of America, 83 F.3d455, 465-66 (D.C. Ct. 1996) (rejecting Title VII sex discrimination claim because *inter alia* it would entangle the court in interpretation of religious doctrine); Natal v. Christian and Missionary Alliance, 878 F.2d 1575, 1576 (1st Cir. 1989) (courts cannot adjudicate disputes "turning on church policy and administration or on religious doctrine and practice."); Franco v. The Church of Jesus Christ of Latter-day Saints, 21 P.3d 198, 203 (Utah 2001) ("[I]t is well settled that civil tort claims against clerics [or churches] that require the courts to review and interpret church law, policies, or practices in the determination of the claims are barred by the First Amendment."); O'Connor v. Diocese of Honolulu, 885 P.2d 361 (Haw. 1994).

Under these authorities, defining theological and ecclesiastical terms is an inherently religious activity that lies beyond the constitutional purview of civil courts and juries. Courts and juries have no competence in such matters. To allow plaintiff to contest the Church's good-faith representation of its own doctrine and polity regarding the meaning of terms like "missionary" and the doctrine and policy under which they operate would immediately make this Court or the jury an arbiter of a disputed issue of religious doctrine. That is strictly forbidden by the First Amendment. Absent a sham, the Church is entitled to describe its own doctrine and polity without challenge from plaintiff.

[5] Osborne stands for the notion that an employer is only liable for negligent supervision when it is on notice that an employee has a proclivity to violate clear employer policies. Id. Plaintiff alleges that, under Osborne, because the Church was generally aware that one of its missionaries could break "the law of chastity"—engage in consensual sexual conduct—and thereby violate Church policies for missionaries, it is fair to infer that the Church had prior notice that Stark had a proclivity toward sexually molesting children. (Plf.'s Resp. Mem., pp. 7.) This line of reasoning would wholly undermine the holding in Osborne. Indeed, the diocese in Osborne certainly knew that one of its priests could engage in consensual sexual conduct with a parishioner—this is why it had a policy against such conduct. But this was not enough to support a negligent supervision claim. Instead, the plaintiff's burden was to show that the defendant diocese knew the particular priest in question was a heightened risk to engage in sexual misconduct with a parishioner. Similarly here, Plaintiff claims must fail because there is no evidence that the Church knew Stark was a heightened risk to molest children.

### III. THE SUMMARY JUDGMENT MOTION SHOULD NOT BE DENIED AS PREMATURE.

Olinger argues that COP's summary judgment motion is premature because no discovery has been taken, and Olinger needs the ability to take discovery in order to prove her claims against the Church Defendants. The Court should reject this argument for several reasons.

First, Fed. R. Civ. P. 56(b) provides that a defendant may "at any time," move for summary judgment. There is no requirement to wait until the close of discovery. In the event the non-moving party cannot yet provide evidence to contradict the summary judgment motion, then Fed. R. Civ. P. 56(f) requires the non-moving party to state the reasons why that is so. Here, Olinger has not done so, and there is no reason to believe that any additional discovery would support her claims against the Church Defendants.

Further, Olinger is simply wrong to suggest that no discovery has been taken in this case. The Court's scheduling order, which was entered nearly seven months ago, permitted discovery to commence at that time and established a discovery cutoff of December 31, 2007. (See DN 11.) COP served written discovery upon Olinger on May 1, 2007, and Olinger served answers to COP's written discovery on June 12, 2007. (See Interrog. and Req. for Prod. of Doc., attached hereto as Exhibit 2; Ans. to Int., attached as Exhibit 1.) The fact that Olinger has made no attempt to take discovery of the Church Defendants should not be held against the Church Defendants, especially where Olinger has failed her duty under Fed. R. Civ. P. 56(f) to offer any explanation for her failure to take discovery or any reason to believe that additional discovery will yield evidentiary support for her claims against the Church Defendants. As such, the Court should not dismiss COP's summary judgment motion as premature.

## **CONCLUSION**

For all the reasons stated herein, Olinger cannot sustain any claim against the Church Defendants as a matter of law. Nor has she set forth any factual support for her claims. Accordingly, the Court should grant summary judgment in favor of the Church Defendants on the entirety of Olinger's Complaint.

Respectfully submitted.


s/ *Jon L. Fleischaker*
Jon L. Fleischaker
Jeremy S. Rogers
DINSMORE & SHOHL LLP
1400 PNC Plaza
500 West Jefferson Street
Louisville, KY 40202
(502) 540-2344 (Telephone)
(502) 585-2207 (Fax)
*Counsel for Church Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was this 12th day of October, 2007 filed electronically via the Court's CM/ECF system, which effects service via email upon the following:

Michael Stidham
Bruce Francisky
P.O. Box 732
Jackson, Kentucky 41339
*Counsel for Plaintiff*

Bernard Pafunda
Pafunda Law Office
175 E. Main Street
Suite 600
Lexington, KY  40507
*Counsel for Defendant Jason Stark*

                                          s/ *Jon L. Fleischaker*
                                          Counsel for Church Defendants